## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**CEDRICK SIMPSON**                                              **PLAINTIFF**

v.                                        **No. 4:14-cv-165-DPM**

**CITY OF LITTLE ROCK, a Municipality; and**
**GREG SIEGLER, individually and in his**
**official capacity**                                            **DEFENDANTS**

### ORDER

1. In the late 1990s, someone shot and killed the manager of a Harvest Foods in Little Rock.  Police interviewed Cedrick Simpson three times about the crime but didn't charge him.  In 2010, though, Detective Greg Siegler from the cold-case unit reviewed the file and decided there was enough evidence to arrest Simpson.  The unit was new; and Siegler was new to homicide investigations.  It took a jury less than an hour to acquit Simpson.  Now he sues Detective Siegler and the City of Little Rock for alleged constitutional and state law violations in the investigation and prosecution.  Siegler and Little Rock move for summary judgment.

2. Here are the material facts—in the light most favorable to Simpson when disputed.  *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008).

On a May evening in 1997, a robber forced his way into the Harvest Foods at 17th and Main in Little Rock when the manager opened the door for a light stocker. The robber and manager tussled. The robber shot the manager, then left with a cash drawer and some food stamps. A trail of loot, with a hat and bandana, led into the neighborhood. The manger died the next day. There was one eyewitness. He thought the robber was wearing a hat and a bandana over his face. Detectives interviewed several folks but didn't nail a suspect.

In June of the following year, 1998, Cedrick Simpson was sitting in jail on a bond violation. He saw a "Get Out of Jail" poster offering that relief in exchange for information about unsolved crimes. Simpson called the number. He didn't know who committed the Harvest Foods robbery, but he figured that if he could get out of jail, he could go into the neighborhood and find out who did it. Two detectives interviewed Simpson. *№ 56-13*. He told them he was at a park one evening in 1997 when some folks told him they'd just robbed the Harvest Foods. Simpson gave the detectives some names. They told him off the record that his statement was no good and that he could rot in jail. (Simpson now admits that everything in this statement was false.)

-2-

In July, Simpson, still in jail, called the detectives again. Detectives Steve Moore and Eric Knowles picked him up and took him by the crime scene. They marched him down the street in jail clothes and cuffs, while they followed in police jackets. Simpson was scared. The detectives told him he was now marked as a snitch—his family would be in danger. Simpson, through tears, begged the detectives to take him back to jail. He said he'd do whatever they wanted. He then gave another statement. № 56-12. This time he admitted being involved. His role was originally to go into the store, but he backed out and became the driver. He saw Fred Yusuf, Fabian Matthews, and Korey Tatum in the store. When they got back into the car, Tatum said he shot someone. Detective Moore interviewed Tatum the same day. Tatum denied involvement and was released. № 61-10 at 3. Moore interviewed Matthews too. Matthews also denied involvement and said he knew Simpson to be a liar. № 61-12 at 2.

Detective Moore interviewed Simpson again the next day. (This was the only interview Simpson didn't initiate.) Simpson recanted. He confessed that the prior statements were lies—he was working at Target the night of the shooting. Simpson says this statement was recorded, but there's no record of

that.  Regardless, there was no physical evidence or any witness linking Simpson to the crime.

The investigation continued, though unfruitfully.  About two years later, in March 2000, Moore drafted an affidavit for Simpson's arrest, acknowledging that Simpson had changed his story and claimed not to have been involved.  *№ 56-17 at 3*.  This affidavit was never used.

In April 2010 — thirteen years after the robbery/murder and twelve years after Simpson first called the police — the LRPD opened a cold case unit. Detective Greg Siegler signed on with no homicide experience.  Siegler's boss, Sergeant Durham, told him to review the Harvest Foods file.  Siegler requested the hat and bandana from the evidence room for retesting.  But, in violation of Department protocol, that evidence had been destroyed during the interim years.  Seigler let Sergeant Durham and the prosecutor know about the missing evidence.  Siegler nonetheless thought there was enough to arrest Simpson without it.  Sergeant Durham reviewed the file and agreed. Siegler sent the file and a warrant affidavit to the prosecutor's office.  The prosecutor got a warrant to arrest Simpson for capital murder.  Simpson turned himself in, spent seven hours in jail, and got released on $100,000

bond.  The case went to trial in March 2013.  After deliberating less than an hour, the jury acquitted Simpson.

**3.**  Simpson has agreed to dismiss five of his claims.  *№ 61 at 1.*  The remaining claims cluster in two groups:  federal law *Brady* and due process claims about evidence handling and disclosure;  and state law claims for malicious prosecution and outrage.

Seigler and Little Rock argue that Simpson can't pursue his *Brady* and due process claims now because the Pulaski County Circuit Court ruled on them in Simpson's criminal case.  There's no need to explore this complicated estoppel point, though. The claims fail on the merits.

In his *Brady* claim, Simpson contends that Siegler should've given the prosecutor several items allegedly clearing Simpson as a suspect:  the hat and bandana;  a photo lineup;  a fingerprint comparison;  and a footprint image. *№ 1 at 6–7.*  But Sielger couldn't have turned over most of this evidence — he didn't have it.  *Compare Helmig v. Fowler*, __ F.3d __, 2016 WL 3675475, at *3 (8th Cir. 11 July 2016).  The hat and bandana had been destroyed in 2007, three years before Seigler got the file in 2010; Seigler's file didn't have a photo lineup shown to a witness;  and there were no shoe prints in there either.

-5-

№ 61-4 at 19, 120–125, 131.* The record's not clear on why the fingerprint

comparison wasn't turned over; but there's been no showing that it — or any

other evidence — was withheld in bad faith. *White v. McKinley*, 519 F.3d 806,

814 (8th Cir. 2008).

On top of all this, Simpson's acquittal throws a shadow on his *Brady*

claim. *Livers v. Schenck*, 700 F.3d 340, 359 (8th Cir. 2012); *Jackson v. City of*

*Peoria, Illinois*, __ F.3d __, 2016 WL 3125228, at *1 (7th Cir. 3 June 2016). It's

true that Simpson sat in jail for seven hours and had to pay about $10,000 to

get out. *№ 61-6 at 29–30.* But the Eighth Circuit hasn't blessed a "fair

indictment" or "fair pretrial detention" angle to *Brady*. *Livers*, 700 F.3d at

359–60. Another court, which has recognized this right, requires the acquitted

person to show that "the decision to go to trial would have been altered by the

desired disclosure" — for example, that the prosecutor wouldn't have filed

charges or that the trial court would've dismissed them. *Mosley v. City of*

*Chicago*, 614 F.3d 391, 397 (7th Cir. 2010) (quotation omitted). Simpson hasn't

shown any of this. There's no reason to think the undisclosed evidence

would've stopped this prosecution — Simpson admits that it'd be speculation

---

*All deposition citations are to deposition pagination.

to say so. № 61-6 at 107. And Siegler's file already showed a lack of physical evidence or witness identification tying Simpson to the crime. (This is unsurprising if Simpson was charged only as the driver.) Yet the prosecutor chose to proceed solely on Simpson's statements—admittedly conflicting—about the crime. There's no reason to think the Circuit Court would've dismissed the charge either: Simpson asked that Court many times to do so, and it repeatedly said no. № 56-26; 56-27; 56-28 & 56-29. Finally, Siegler is entitled to qualified immunity in any event, because the post-acquittal *Brady* right Simpson asserts wasn't clearly established in 2010. *Livers*, 700 F.3d at 360.

Simpson's general due process claim about evidence destruction fails too. The standard is bad faith. *Briscoe v. County of St. Louis, Missouri*, 690 F.3d 1004, 1013 (8th Cir. 2012). And Simpson hasn't presented evidence from which it could reasonably be inferred. The hat and bandana shouldn't have been destroyed. № 61-4 at 29, 40. But the unrebutted explanation was negligence—"a clerical error or something of that nature." № 61-4 at 29–30. Siegler thinks someone probably checked the wrong box on an evidence-retention form. № 61-4 at 29–30. And the evidence was destroyed in 2007,

while the case was cold. № *61-4 at 39*. Likewise the supposed recording of Simpson's third statement. There's a dispute about whether it existed, but no material dispute about whether it was destroyed in bad faith. (The receipt Simpson cites to prove the recording's existence doesn't do so — it shows that a statement was filed before 9:00 a.m. on 20 July 1998; Simpson wasn't checked out for the third interview until 9:50 a.m. that day. № *61-17 at 2–3*.)

Simpson's *Brady* and due process claims against Little Rock fare no better. There's no evidence that LRPD had a practice of not disclosing evidence. *Marksmeier v. Davie*, 622 F.3d 896, 902–03 (8th Cir. 2010). Nor is there a sufficient showing that LRPD failed to train its employees to handle evidence. Detective Siegler testified that destroying evidence would violate Department protocol; what happened here was a slip-up, and that doesn't establish deliberate indifference. № *61-4 at 29–30, 40; Larkin v. St. Louis Housing Authority Development Corporation*, 355 F.3d 1114, 1117 (8th Cir. 2004). The 2015 audit of LRPD's evidence room is troubling, but Simpson hasn't tied the audit to the way evidence was handled years before he was charged. № *61-19 & № 61-36 at 90–92*. And, as in Simpson's *Brady* claim, there's a

causation problem:  there's no indication that the destroyed hat and bandana would've altered the course of his criminal case.  *Livers*, 700 F.3d at 356.

The Court declines to exercise supplemental jurisdiction over Simpson's state law claims. 28 U.S.C. § 1367(c)(3). They will be dismissed without prejudice. *Gibson v. Weber*, 433 F.3d 642, 647 (8th Cir. 2006).  Simpson's trial brief and summary judgment response talk about a federal malicious prosecution claim, but his complaint pleads only an Arkansas one. *№ 1 at 12.*

\*   \*   \*

Motion, *№ 56*, granted in part and denied in part. Counts 1–2 and 5–7 of Simpson's complaint will be dismissed with prejudice;  Counts 3–4 and 8–12 will be dismissed without prejudice.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

22 July 2016